UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. S1 4:20-CR-774 RLW |
| JERMAINE COLLIER, | ) ) ) |
| Defendant. | ) ) |

**GUILTY-PLEA AGREEMENT**

COME NOW the parties and hereby agree as follows:

**1.  PARTIES**

The parties are the Defendant Jermaine Collier, represented by defense counsel Terence Niehoff, and the United States of America ("the Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.  GUILTY PLEA**

**A.  The Plea**:  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), in exchange for Defendant's voluntary plea of guilty to Counts One and Two of the Superseding Information, the Government agrees to dismiss the Indictment at the time of sentencing and that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the Government at this time, relative to: (1) Defendant's obstruction of justice by attempting to conceal his possession of a shotgun in December 2020; (2) Defendant's sales of various controlled substances, as reflected in text messages recovered from his white Galaxy S4 cellular phone; or (3) Defendant's possession of marijuana on December 3 and 11, 2020.

B.  **The Sentence**: The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. Further, based upon the unique circumstances of this case and in exchange for the Government's agreement to forego other charges, the parties jointly recommend a sentence of 84 months.

3.  **ELEMENTS**

   A.  **Counts One and Two:** Defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

   (i)  Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

   (ii)  Defendant, thereafter, knowingly possessed one or more firearms;

   (iii)  At the time Defendant knowingly possessed the firearm(s), he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

   (iv)  The firearm was transported across a state line at some point during or before Defendant's possession of it.

4.  **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts arise from a series of misconduct, all of which occurred in the Eastern District of Missouri and may be considered as relevant conduct pursuant to Section 1B1.3:

   A.  **Domestic Assault – November 25, 2020**

On November 25, Collier told his ex-girlfriend to come by his house on E. DeSoto Avenue, in the City of St. Louis, to pick up some money he owed her. When she arrived, Collier blocked her from exiting her vehicle and exhibited a black-and-greenish-brown rifle in a threatening manner.

Two women then jumped into the ex-girlfriend's car and assaulted her. After escaping, the victim reported the incident to the St. Louis Metropolitan Police Department (SLMPD), and officers photographed her heavily bruised and swollen eyes. She reported having seen Collier carry the rifle on prior occasions and that he had other guns and narcotics at his main residence on Oregon Avenue. Text messages recovered from Collier's phone[1] corroborated the ex-girlfriend's account. Just after the incident, Collier also sent a message bragging that he "[j]ust got that bitch. . . . Got her good to."

### B. Initial Arrest – December 3, 2020

An SLMPD detective assigned to investigate Collier learned that he was a convicted felon and had active bench warrants. The detective proceeded to conduct surveillance at Collier's residence on Oregon Avenue in the City of St. Louis. On December 3, the detective saw Collier get into a red Chevy Camaro and followed him to a nearby gas station. Collier was then taken into custody while he was pumping gas. After Collier was secured, he advised that he had a gun in his jacket pocket, where officers found a loaded purple-and-black, 9mm Ruger pistol. Collier also had 3 grams of marijuana in his other pocket and two phones, all of which were seized.

During a recorded, post-*Miranda* interview, Collier admitted that he had the Ruger "on his person" and that he knew he was a convicted felon. Collier also indicated that there were two other guns at his residence on Oregon Avenue. In response to questioning from officers, Collier confirmed that the other two guns would have his fingerprints and DNA on them because he would take them apart and "play with them all the time." Collier advised that he and his girlfriend bought the guns together.

---

[1] Collier's white Galaxy S4 cellular phone was searched pursuant to a valid state search warrant. In addition to the messages confirming the domestic assault and pictures of the black-and-greenish-brown rifle Collier used in the incident, the phone also contained a series of text messages in which Collier negotiated the sale of various controlled substances, including Xanax, Adderall, and Ativan. As indicated in Section 2(A) of this Agreement, in exchange for Collier's guilty plea, the Government will forego charges related to the drug transactions documented on this phone.

As Collier was being transported to the St. Louis City Justice Center, officers informed him that they planned to apply for a warrant to search the Oregon Avenue residence. Collier responded that a warrant was unnecessary because he would consent to a search of the residence. The officers drove to the residence, where Collier completed a consent-to-search form. Officers then knocked on the door and informed Collier's girlfriend that, while they did not have a search warrant, Collier had consented to them retrieving the two firearms from the home. The girlfriend then directed officers to a downstairs bedroom, where they found the black and greenish-brown Anderson AM-15 rifle used in the domestic assault and a black 9mm Hi-Point, both with large-capacity magazines.

During a recorded, post-*Miranda* interview, the girlfriend advised that she purchased the 9mm Hi-Point from an individual and the Anderson AM-15 from a gun store. Collier was with her at the time of purchase of the AM-15. She also acknowledged that Collier had handled the guns in their home and that she had given him the purple and black Ruger because he had some work to do.

### C.     Search Warrant and Federal Arrest – December 11, 2020

Following Collier's initial arrest, the United States District Court for the Eastern District of Missouri issued a valid search warrant based on an affidavit establishing probable cause to believe that Collier had additional firearms and narcotics at the Oregon Avenue residence. The warrant was executed on December 11. Inside the home, officers found a mason jar with 9.65 grams of marijuana and drug grinders. When asked if he had any other guns or narcotics in the house, Collier said, "No, that would be very dumb. I'm already fucked." Collier was then taken into custody on his federal arrest warrant.

### D.     Obstruction of Justice and Recovery of Shotgun – December 2020

After Collier's second arrest, an SLMPD detective reviewed the recorded jail calls Collier made while in custody. On December 4, Collier called his cousin and said he needed to get out of jail so he could "pull up" on his ex-girlfriend and "get her to drop this shit." On another call two

days later, the cousin was at Collier's house on DeSoto Avenue to feed his dog, and Collier said, "Do me a favor. Take that with you, by the door. . . .You see it? Take that with you and unload it." Collier later asked if the cousin "put that shit in the trunk," and the cousin said he had. Collier then advised him to "[b]e careful and put that motherfucker somewhere. You know I love you, and I don't want you going through the shit I'm going through."

Believing that Collier had asked his cousin to conceal a firearm, SLMPD officers responded to the cousin's residence in the City of St. Louis on December 18. After advising the cousin of his *Miranda* rights, the officers asked what Collier wanted him to get from the home. The cousin eventually admitted that he had taken a shotgun from the Collier's house on DeSoto Avenue and that it was under his couch. Officers found the loaded Savage Arms, 20-gauge shotgun there, wrapped in a towel inside a trash bag. Collier specifically admits that he had knowledge of and control over the shotgun until it was removed from the DeSoto residence and that he had both the power and intention to exercise dominion or control over the shotgun even after his cousin removed it from the house.

### D.     Other Relevant Facts

An expert firearms examiner determined that the 9mm Ruger, the Anderson AM-15 rifle, the 9mm Hi-Point, and the Savage Arms shotgun were all manufactured outside the State of Missouri and, therefore, had travelled across state lines or in interstate commerce prior to or during Collier's possession. The firearms examiner also confirmed that all four guns can expel a projectile by the action of an explosive and, therefore, qualify as "firearms" as defined under federal law. Additionally, Collier admits that he possessed the Ruger, Anderson Manufacturing, Hi-Point, and Savage Arms firearms; that he was convicted of multiple felony offenses punishable by imprisonment for a term exceeding one year prior to the possession of all three guns; and that, at the time of possession, he knew he was a convicted felon.

5.  **STATUTORY PENALTIES**

    A.    **Statutory Penalties**: Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

        **(i)**    **Counts One and Two**: imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

    In certain situations under Title 18, United States Code, Section 924(e), Defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to Defendant's sentence.

6.  **U.S. SENTENCING GUIDELINES: 2018 MANUAL**

    Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

    A.    **Offense Conduct**:

**COUNTS ONE AND TWO**
**(Possession of a Firearm by a Convicted Felon)**

        **(i)**    **Chapter 2 Offense Conduct**:

            **(a)**    **Base Offense Level**: The parties agree that the Base Offense Level is found in Section 2K2.1(a) and depends on, among other things, the nature of Defendant's criminal history and the characteristics of the firearm. The parties specifically agree that at least one firearm

Defendant possessed was loaded with a large-capacity magazine. The Base Offense Level may also be determined under Section 4B1.4 if Defendant is determined to be an Armed Career Criminal.

  **(b)**   **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

- Two-level increase pursuant to Section 2K2.1(b)(1) because Defendant possessed four firearms;

- Four-level increase pursuant to Section 2K2.1(b)(6)(B) because Defendant possessed a firearm in connection with another felony offense, including Unlawful Use of a Weapon (Exhibiting) and Domestic Assault (3rd Degree).

**(ii)**   **Chapter 3 and 4 Adjustments**:

  **(a)**   **Victim-Related Adjustments:** The parties agree that two levels should be added pursuant to Section 3A1.3 because Defendant used one of the firearms he unlawfully possessed to physically restrain a victim.

  **(b)**   **Obstruction-Related Adjustments:** The parties agree that two levels should be added pursuant to Section 3C1.1 because Defendant attempted to obstruct the administration of justice with respect to the investigation of the instant offense of conviction by enlisting his cousin to conceal the Defendant's possession of the shotgun.

  **(d)**   **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the Government subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**B.    Estimated Total Offense Level:**   Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

**(i)    Counts One and Two:**   The parties agree that with respect to Counts One and Two, the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless Defendant is an Armed Career Criminal. Depending on the underlying offense and Defendant's criminal history, Defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds Defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not an Armed Career Criminal.

**C.    Criminal History:**   The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the

Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

  D. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.** **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

  A. **Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   i. **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

   ii. **Sentencing Issues:** In the event the Court accepts the plea and sentences Defendant to no more than the greater of the parties' jointly recommended sentence of 84 months or the Sentencing Guidelines range, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant to no less than the parties' jointly recommended sentence of 84 months or the Sentencing Guidelines range.

  B. **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  C. **Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.** **OTHER**

  A. **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

  B. **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the Government to take any civil, tax, immigration/deportation or administrative action against Defendant.

  C. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

  D. **Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of

sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

        **E.**    **Possibility of Detention:**    Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

        **F.**    **Fines and Costs of Incarceration and Supervision:**    The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

        **G.**    **Forfeiture:**    Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the Government and to rebut the claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS**

    In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

**10.**     **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement that deal with charges the Government agrees to dismiss or not to bring.

06/12/2021
Date

Zachary M. Bluestone
Assistant United States Attorney

7-1-21
Date

Jermaine Collier
Defendant

7-1-21
Date

Terence Niehoff
Attorney for Defendant

Page 13 of 13